## HAZLEHURST versus POPE.

1. Where a bill of exchange has been drawn by a firm, in favor of one of the members thereof, and indorsed to a stranger, the latter is entitled to maintain an action thereon against the drawers, notwithstanding the fact that the payee is a partner.

2. Where one becomes the indorsee of a bill of exchange, in trust, to secure the payment of debts due by the indorsee to other persons, and afterwards executes a release under his individual signature, such release can not be determined by the court (without the intervention of a jury) to be a release as to the bill so indorsed in trust.

In error from Madison County court.

This action was brought by Hazlehurst against Pope, the drawer of a bill of exchange. The bill was drawn by Hazard, Pope & Co. on Montgomery & Sons of Philadelphia, in favor of Banker, one of the firm of Hazard, Pope & Co.; and Banker, indorsed the bill to the plaintiff, in trust, to secure the payment of certain debts, due to other persons. Banker, subsequently having executed a conveyance of his estate, in trust, for the benefit of his creditors; which stipulated for a release : many of his creditors signed the same, and among others, the plaintiff, individually.

The bill of exchange being regularly protested, Hazlehurst sued Pope, one of the drawers thereof; and in defence to the action, it was insisted that the release, signed by the plaintiff, barred a recovery : and so the court below charged, instructing the jury, that the release was, in law a discharge of the action : and the plaintiff excepted.

*Thornton*, for plaintiff—*Hopkins*, contra.

SAFFOLD, J.—The nature of the question will sufficiently appear from the following sketch of the facts. The action was assumpsit, founded on a protested bill of exchange for four thousand dollars, drawn by the firm of Hazard, Pope & Co. upon Messrs. Montgomery & Sons, Philadelphia, payable thirty days after sight, to Charles N. Banker, or order, and by him indorsed to the plaintiff Hazlehurst, who was also plaintiff below. The defendant, W. Pope, was one of the firm. The assignment of the bill from Banker to Hazlehurst, was declared to be in trust for the payment of various persons, creditors of the former, and appears from his letter to Hazlehurst, describing and declaring the trust, to have been made on the twenty-third January, 1826, and to have been accepted in writing by the latter on the same day ; the bill bears date the sixth of the same month. On the 28th of the same month; Banker and wife executed a conveyance, in trust, to Samuel Archer and said Hazlehurst, thereby conveying, for the benefit of Banker's creditors, all his property, real and personal, and all his notes, bonds, accounts and demands, of all descriptions, for the benefit of such of his creditors as should execute within the time, and in the manner therein described, a release of the residue of their debts, or demands. Many of his creditors released accordingly; among others, said Hazlehurst, on the 4th March, same year ; it was also shewn that he was individually a creditor of said Banker, in his individual capacity. It was further proven on the trial, on the part of the defendant, that Banker, the payee of the bill of exchange, was a member of the firm of Hazard, Pope & Co. : further, it was shewn by the plaintiff, that the signature of Samuel Hazlehurst to the release,

was made without any addition thereto, and as if done in his individual capacity.

Upon this evidence, the court, at the request of the defendant's counsel, instructed the jury, that the release, as above described, was in law, a discharge of the action.

This instruction to the jury, is the cause assigned for error.

Whatever difficulty the case involves, is to be found in the question, whether the plaintiff's signature, purporting to be in his individual capacity, to the release of debts against Banker, and which was also signed by his creditors generally, should be regarded as a discharge of the debt created by the bill of exchange, against the firm of Hazard, Pope & Co. as the drawers. Banker, it will be observed, was one of the members of the firm, as well as the payee and indorser of the bill of exchange, and the plaintiff accepted an assignment of, and continued to hold the bill as trustee merely, for the payment of specific debts.

On the part of the plaintiff, it is contended in argument, that Banker being one of the drawers of the bill, Hazlehurst's release to him is a discharge to each, and all the members of the firm. On the contrary, it is insisted that as Hazlehurst held the bill only as trustee, he had no authority nor intention to release it—that his intention to release only his individual debt, is sufficiently indicated by the form and manner of his signature; or if he intended to release the bill, his act in that respect, was fraudulent and void.

As authority on this point, reference has been made to various decisions, some of which were made by this court.

In the case of Tindall, admx. v. Bright,[a] it was
ruled that an action at law was not sustainable on a
bill single, payable to a firm, of which one of the ob-
ligors is a partner.

In the later case, of Ramsey vs. Johnson.[b] the same
principle was recognised, and applied to joint and se-
veral promissory notes, even when sued on by an as-
signee an indifferent person.   On both principle and
authority we remain satisfied with these former deci-
sions, particularly the first, which was a case between
the original parties.—See the case of Manwaring v.
Newman.[c]

But are the principles of these decisions decisive
of the case at bar?

It is inconsistent with all the rules of law, and
principles of practice, that the same individual should
appear as both plaintiff and defendant in the same
suit, or be at the time in a situation to become such,
especially on a security which is not properly negoti-
able by the law merchant.   It has, however, long
been the practice of the courts of law, as well as of
equity, to notice and protect the rights of assignees
of choses in action.   As an illustration of this power
and disposition, reference has been made to the case
of Littlefield vs. Storey.[d]   That was an action of debt
on specialty—one of the pleas was payment, to which
the plaintiff replied that before the commencement of
the suit, he sold and assigned the obligation to one
Shepherd, to have and receive the money thereon to
his own use; and authorised him, in the name of him
the plaintiff, to demand and receive the same to the
use and benefit of him, the said Shepherd, of which
the defendant had notice: and that the action was
prosecuted accordingly, for the benefit of Shepherd.

[a] 1 Ala.Rep 193.

[b] Ib. 418.

[c] 2 Bos. & Pul. 120,& authorities cited.

[d] 3 Johns,R 4.5.

The law applicable to that case was held to be clear, that the court would recognise and protect the rights of an assignee of a *chose in action*. On that occasion it was also remarked by the court, that in the case of *Andrews* vs. *Beecker*,[a] it was held, that a release by the obligee of a bond after an assignment, and notice, was a nullity.

[a]1 Johns. C. 411.

In *Smith, et al.* vs. *Lusher, et al.*[b] the same person being both payor and payee to a note or bill, was extensively discussed and adjudicated; also the distinction necessary to be observed between the right of such payee and his assignee, to maintain a suit on the instrument. The prominent facts in that case were, that *Van Santvoord*, to whom the note sued on was made payable, and who was one of the defendants to the action, was a partner to the firm of William Soulden & Co. when that note was made: that the note was made by William Soulden in the name of said firm to Van Santvoord, without the knowledge or consent of Peter Smith, for an account alledged by Van Santvoord to be due from the firm to him; and that Lusher, the plaintiff, when the note was indorsed to him by Van Santvoord had notice that the note was made by Soulden, in the name of the firm, payable to one of the partners, and for what consideration it was made.

[b]5 Cowen, 688

In this aspect of the case, it was decided by the Court of Errors of New-York, that though no action would have lain by Van Santvoord, he being both maker and payee, yet the endorsee might bring an action against the firm, and declare on the note as payable by the firm to Van Santvoord, and by him endorsed to the plaintiff; and that the latter could in that form recover. This it will be observed was in

affirmance also of the judgment of the Supreme court of that state.

In the final decision, opinions were delivered only by the *Chancellor*, and Senator *Colden;* and the court appears to have been unanimous. The *Chancellor* remarks, " no fictitious or new debt was created by Soulden; but for an existing debt, he gave the promissory note of the partnership. Van Santvoord could not indeed, be both debtor and creditor in the same transaction; and as he could not maintain a suit against himself, it is urged that this note was totally void. But why should this consequence follow? If the note did not bind Van Santvoord, why should it not bind the other partners?" &c. Farther, he says, " this transaction as it is stated, was free from all fraud; and the fact, that Van Santvoord was one of the partners, whose firm was used in giving the note, does not, in my opinion, invalidate the note against the other partners."

These views of the chancellor are less satisfactory, than those of Senator Colden, in the same case. He says, the note was payable to Van Santvoord, one of the firm; and the question is, whether that circumstance should prevent his endorsers from recovering. " If" says he, " the note had remained in the hands of Van Santvoord, he could not have sustained any suit upon it. For, either he must have sued all the partners, and then it would have been a suit by one against himself, or he must have sued his copartners only, and then the note would not have supported his declaration, in which he must have averred, that the defendants promised; whereas the note would show that the promise was by all the partners. These would be *technical* objections, which would be fatal

in a suit at common law, in the name of the payee. Yet there can be no doubt, but that a partner might have relief in a court of chancery, on a note given to him by his co-partners." He adds, " nothing is more common, than for partners to draw a bill payable to one of the firm. Often bills are made payable to, and drawn upon the makers themselves; and very often bills are made payable to fictitious payees. These bills may be mere waste paper until they are negotiated; but the moment they are endorsed, they become efficient securities in the hands of the indorsees. If it be asked by what law do they become so, the answer is, it is by the *lex mercatoria,* the evidence of which is long, constant, and continued usage. This is the law merchant, with respect to bills of exchange : and by the statute it is provided, that promissory notes ' shall have the same effect, and be negotiable in like manner as inland bills of exchange, according to the custom of merchants.' Since promissory notes have been put on the footing of bills of exchange, they have, like them, been made payable to the order of one of the makers, or to the makers' own order."

Then, admitting the principle contended for, and as heretofore recognised by this court, that the same individual cannot be plaintiff and defendant in the same action; and that a note or bill drawn by several, payable to one of the makers, is a mere nullity, while it remains in that situation; yet it does not follow, in case of *negotiable* securities at least, that an indorsement of the paper does not give it validity.— The contrary appears to be the law. It is true, that in the case referred to, of *Ramsey* vs. *Johnson,* this court decided, that on a promissory note of this description, an action at law could not be sustained, in

favor of an indifferent assignee. That decision, however, was, and must necessarily have been made with reference to the statute of this state, which does not, like the English statute of *Ann*, and the statute of New-York, render assigned promissory notes *negotiable*, in the strict legal acceptation of the term. But in relation to the security now in question, being a bill of exchange, there can be no doubt as to its negotiability; and after its assignment to the plaintiff in error, who was unconnected with the firm, we think it was valid and recoverable in the hands of the indorsee.

With respect to the objection that prevailed with the court below, that the release as already described, operates as a discharge of this action, it is deemed sufficient to say that, in as much as the assignment to Hazlehurst appears to have been intended to secure the entire payment of the debts thereby provided for, the sum being adequate to the purpose; as in executing the release, Hazlehurst appears to have used his individual signature, and he had an individual debt, which was a proper subject of release; these circumstances admit the interpretation, that the individual debt alone was intended to be released, as would be the legal effect of the release alone ; at least, the jury should have been left at liberty to draw that inference, if they found the facts to exist as stated, and this conclusion appeared to them most natural and reasonable. Therefore, in declaring the release to have operated as a discharge of the action, we unite in opinion, that the court below erred; for which the judgment is reversed, and the cause remanded.